# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **PLAINTIFFS LISTED IN**<br>**IN EXHIBIT A,** | : | **Case No.** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **VERIFIED COMPLAINT FOR** |
| **CHIEF JUSTICE MAUREEN** | : | **TEMPORARY RESTRAINING** |
| **O'CONNOR** | : | **ORDER AND DECLARATORY** |
| **SUPREME COURT OF OHIO** | : | **AND INJUNCTIVE RELIEF** |
| **65 SOUTH FRONT STREET,** | : | |
| **6TH FLOOR** | : | |
| **COLUMBUS, OH 43215** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **HONORABLE JUDGE MARK R.** | : | |
| **SCHWEIKERT** | : | |
| **HAMILTON COUNTY COURT** | : | |
| **OF COMMON PLEAS** | : | |
| **HAMILTON COUNTY COURTHOUSE** | : | |
| **100 MAIN STREET, ROOM 310** | : | |
| **CINCINNATI, OHIO 45202** | : | |
| | : | |
| *sued in their official capacities as* | : | |
| *Chief Justice of the Ohio Supreme Court* | : | |
| *and assigned Hamilton County* | : | |
| *Common Pleas Judge* | : | |

## I. PRELIMINARY STATEMENT

1. In February 2018, the cases known as Dr. Durrani cases will have been litigated for

   five years. It is the largest medical malpractice case in the history of the Cincinnati

   area and probably the state of Ohio. The stakes are high for the Dr. Durrani

   Defendants, which include Dr. Durrani and many hospitals. There have been no trials

   in three years as the Dr. Durrani defendants have delayed, removed and appealed.

   After a five-year legal battle, the Dr. Durrani Defendants have now what they want.

1

A judge ready to ignore facts and law. It is beyond wrong what has occurred and is occurring to Plaintiffs.

2. **This civil rights action seeks an order restraining Chief Justice Maureen O'Connor from ruling on a Disqualification Affidavit of Judge Mark Schweikert. Plaintiffs also seek an Order prohibiting Judge Mark Schweikert from taking any action on their cases until such time there is a ruling on the Affidavit of Disqualification pertaining to him.**

3. Plaintiffs are only requesting relief this Court can give and under the facts, law and circumstances the Court can and should give. If there is other relief the Court can provide Plaintiffs, Plaintiffs will accept it.

4. Plaintiffs incorporate many of the facts from the Affidavit of Disqualification in the factual allegations for context and proof. The Affidavit of Disqualification is attached as **Exhibit 1**.

5. Principles of due process and equal protection require Plaintiffs to have a fair and impartial tribunal to hear their cases. There are serious irregularities which has occurred and the Affidavit of Disqualification and this Verified Complaint outlines them.

6. After the Plaintiffs filed the Affidavit of Disqualification, Plaintiffs forwarded the attached to Judge Mark Schweikert. **Exhibit 2**. The law is clear. The filing of the affidavit deprives Judge Mark Schweikert of any authority to do anything on Plaintiffs' cases until the Affidavit of Disqualification pertaining to Judge Mark Schweikert is heard.

7. However, based upon the Dr. Durrani Defendant law firms responses to **Exhibit 2** attached as **Exhibit 3** and Judge Mark Schweikert refusal to suspend rulings knowing an Affidavit of Disqualification was going to be filed, a temporary restraining order and injunctive relief is necessary to maintain the status quo until the Affidavit of Disqualification of Judge Mark Schweikert is heard and heard properly.

## II. JURISDICTION AND VENUE

8. Jurisdiction over the federal claims is conferred on this Court by 28 U.S.C §1331 and §1343(3) and (4). Venue is proper under 28 U.S.C. §1391.

## III. PARTIES

9. Plaintiffs are primarily residents of Kentucky and Ohio and a few are residents from other states throughout the United States.

10. Defendant Chief Justice Maureen O'Connor is the Chief Justice of the Ohio Supreme Court. She is responsible for administering the Ohio State Court system. However, there are conditional limits to their power. She is being sued for injunctive relief only.

11. Defendant Mark Schweikert is a Hamilton County Common Pleas Judge serving by special appointment of Chief Justice Maureen O'Connor. He is being sued for injunctive relief only.

## IV. CONSTITUTIONAL ISSUES

12. Based upon the facts contained herein, Plaintiffs have serious constitutional issues which require protection. They include:

    A. Due process

    B. Equal protection

C. Seventh Amendment right to trial by jury

D. Right to a fair and impartial tribunal

E. Others

## V. FEDERAL RULES OF CIVIL PROCEDURE RULE 65 GOVERNS PLAINTIFFS REQUEST

(a) Preliminary Injunction.

(1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

(2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) Temporary Restraining Order.

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and

4

damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

(d) Contents and Scope of Every Injunction and Restraining Order.

(1) *Contents.* Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

(B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

(2) *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

(e) Other Laws Not Modified. These rules do not modify the following:

(1) any federal statute relating to temporary restraining orders or preliminary injunctions in actions affecting employer and employee;

(2) 28 U.S.C. §2361, which relates to preliminary injunctions in actions of interpleader or in the nature of interpleader; or

(3) 28 U.S.C. §2284, which relates to actions that must be heard and decided by a three-judge district court.

(f) Copyright Impoundment. This rule applies to copyright-impoundment proceedings.

## VI. FACTS

13. Plaintiffs respectfully assert Chief Justice Maureen O'Connor and Judge Mark Schweikert have a bias and a prejudice against Plaintiffs and their claims. Plaintiffs further assert Chief Justice Maureen O'Connor and Judge Mark Schweikert have bias and prejudice for the Defendants and should be disqualified to sit in the management of the cases, hear Motions, make rulings and hold trials of the Dr. Durrani cases in Exhibit A. This is an issue before the Ohio Supreme Court has of Friday December 15 after 4 PM. Thus, a ruling on Plaintiffs' Motion is urgent.

14. This is a serious allegation which Plaintiffs do not make lightly. However, it's impossible based upon the facts and circumstances NOT to make it. In accordance with ORC § 2701.03 as to Judge Mark Schweikert and S.C Prac.R 14.6 as to Chief Justice Maureen O'Connor on December 15, 2017, Plaintiffs filed an Affidavit of Disqualification in the Ohio Supreme Court clerk office. The facts detailed in the affidavit and under the law, support disqualification. Under R.C. § 2701.03, the requirements are met in the affidavit. The next scheduled hearing on the Dr. Durrani cases is February 12, 2018. That is important for the Affidavit of Disqualification. There is no urgency for ruling on the Affidavits of Disqualification. **However, there is an urgency for this Court to rule on Plaintiffs' request because Defendants can act any moment now on the Affidavits of Disqualification. It they do, Plaintiffs will be irreparably harmed.**

15. **It is important to point out to the Court there has been no state action yet which preempts this Court from acting. This is not on an appeal of a state decision.**

16. Substantive rights of Plaintiffs will be harmed if there is not a injunctive relief. R.C. § 2701.03 does not apply to Chief Justice Maureen O'Connor. However, the affidavit was submitted not only under R.C. § 2701.03 as to Judge Mark Schweikert, but also under SC Prac. R. 14.6 as to Chief Justice Maureen O'Connor. A letter was addressed to the Supreme Court clerk with this affidavit attached under S.C. Prac. R. 14.6. Under Code of Jud. Conduct Rule 2.11 and other sections, the conduct undermines the independence, integrity and impartiality of Chief Justice Maureen O'Connor and Judge Mark Schweikert.

17. Plaintiffs request in the Affidavit a qualified or qualified members of the Supreme Court, not Chief Justice Maureen O'Connor and who has no bias or prejudice, to review the affidavit and decide it on the merits as to Judge Mark Schweikert. In fact, it probably should not be a Supreme Court Justice who would affirm the Chief Justice's actions.

18. Plaintiffs and Deters Law invested extraordinary time and financial resources advocating on behalf of Dr. Durrani's victims for five years. To learn what is set forth in the affidavit after doing so and recognizing the bias and prejudice now upon the Plaintiffs is very disheartening. As reflected in the affidavit, the information creating the need for the affidavit just revealed itself.

19. Deters Law represents approximately 528 clients in Hamilton County in medical malpractice actions against Dr. Abubakar Atiq Durrani and the hospitals where he either worked or had surgical privileges. Every action has the required expert affidavit. Deters Law secured 528 expert affidavits for spine surgery cases.

20. Among these Defendant Hospitals are West Chester Hospital (owned by UC Health), Cincinnati Children's Hospital Medical Center, Journey Lite of Cincinnati, Good Samaritan Hospital, Christ Hospital and Riverview Hospital. All of these hospitals are members of and participate in the Ohio State Medical Association and other organizations which have endorsed and supported Chief Justice Maureen O'Connor.

21. In addition to the civil medical malpractice actions brought against Dr. Durrani by hundreds of injured plaintiffs, on August 7, 2013, Dr. Durrani was indicted by the Federal Government for performing unnecessary surgeries and for defrauding the Medicare and Medicaid programs. Specifically, the complaint charged Dr. Durrani

7

with health care fraud, in violation of 18 U.S.C. § 1347, and making false statements in health care matters, in violation of 18 U.S.C. § 1035. The United States filed more related charges on a superseding indictment.

22. Following these criminal indictments, in December of 2013 and prior to the first plaintiff's trial in these actions, Dr. Durrani fled the United States and sought refuge in his native Pakistan, where he now lives and works, carrying on a normal life, protected by his country not honoring an extradition treaty since U.S. Special Forces flew into Pakistan and killed Osama Bin Laden. His flight violated his bond release and not only is he in contempt, but there is an arrest warrant for his flight.

23. Dr. Durrani has not returned to the United States to face his criminal trial which was scheduled August 2014 or scheduled civil trials, although he has remained in contact with the attorneys representing him in these matters.

24. Dr. Durrani took what he could get from each patient and their insurance providers, generating immense income for the hospital defendants in the process, and then fled the United States when the Government sought to hold him accountable. Ohio and United States taxpayers lost millions of dollars.

25. All judges except Robert Ruehlman have failed to give a proper sanction for Dr. Durrani's failure to give a deposition. Dr. Durrani refused to provide a deposition in every case so he could be cross examined. Ohio Civil Rule 37 allows and requires a harsh sanction for his refusal to offset the clear advantage the defense has by avoiding the cross examination. Rule 37 even allows default and the striking of defenses. We have yet to receive an appropriate and fair sanction. Judge Mark Schweikert is allowing Dr. Durrani to benefit from his flight and refusal to give a deposition.

26. The juries, knowing Dr. Durrani left the country, still have no context to make that a sanction.

27. Jurors believe that Dr. Durrani was not present because he was busy taking care of patients/doing surgery or working as a doctor without borders.

28. The sanction should be and must be that Dr. Durrani was indicted by a federal grand jury and faced 38 counts of fraud for unnecessary surgeries and prescription fraud at a scheduled August 2014 trial. He also lost his Kentucky and Ohio licenses. He faces over 500 civil lawsuits. Therefore, as **admitted** by his criminal and civil defense lawyers—he fled to Pakistan where he still practices medicine.

29. Sanctions are supposed to be prejudicial. It is not a case of weighing the beneficial versus prejudicial value of Dr. Durrani's absence.

30. Dr. Durrani is not being punished. There is probably no more proof of the bias and prejudice of the Defendants than the fact that they would prefer to participate in the wrongful dismissal of cases rather than sanction an indicted doctor who fled the country. One of those sanctions would prohibit the dismissal of any case. That is the magnitude of the healthcare and medical industry impact on the Defendants. Judge Mark Schweikert would rather dismiss cases than sanction an indicted doctor who fled the country.

31. Maureen O'Connor is the current Chief Justice of the Ohio Supreme Court and has been during the entirety of the Dr. Durrani litigation. The Dr. Durrani litigation is a reference to 528 Ohio state cases filed by Deters Law against Dr. Durrani and several hospitals including: Children's Hospital, Christ Hospital, Good Samaritan Hospital, Journey Lite, Riverview and West Chester Medical Center.

9

32. The financial campaign records from the Ohio Secretary of State for Maureen O'Connor's campaign for the Ohio Supreme Court reflect her largest contributors over the years to be from the healthcare industry, insurance industry and large defense law firms who represent those industries. These amounts are in the hundreds of thousands of dollars by each group. They total millions. **Exhibit 4** is the campaign contribution chart of Maureen O'Connor from the first time she ran for the Ohio Supreme Court. It reflects the following:

    A. The Ohio Hospitals supporting Chief Justice Maureen O'Connor both individually and collectively through organizations to which Dr. Durrani Defendant hospitals belong and Ohio PACS to which the contribute.

    B. Contributions from all the law firms defending Dr. Durrani Defendants. That's right, all the law firms defending Dr. Durrani Defendants contributed.

33. The campaign laws of the United States and Ohio allowed Maureen O'Connor to accept those contributions legally and ethically. They gave and she accepted. That is not the allegation or the issue.

34. In addition, organizations such as the Ohio State Medical Association and friends of Ohio Hospitals have endorsed Chief Justice Maureen O'Connor.

35. Maureen O'Connor served as an Associate Justice of the Ohio Supreme Court from January 1, 2003 to December 31, 2010. She became Chief Justice on January 1, 2011.

36. Dr. Durrani Defendants benefit from Republican legislation limiting damage limitations and a statute of repose, they do not need to also receive the benefit of Justices and Judges over which they have controlling influence.

37. The comprehensive financial contributions to Chief Justice Maureen O'Connor from the Secretary of State office reflect her campaigns for Supreme Court. **Exhibit 4.** The contributors, their names, their occupations, their employers all speak for themselves. It's overwhelming proof Chief Justice Maureen O'Connor has received overwhelming support from the same interests as Dr. Durrani Defendants including from the same defense law firms and Defendants involved in this litigation. There are no contributions from anyone connected to Deters Law and Plaintiffs.

38. **THE IMPACT OF THIS IS REFLECTED IN SEVERAL PUBLISHED ARTICLES.**

39. **In a New York Times Article from October 1, 2006, the following excerpts appeared and article is attached as Exhibit 5:**

"An examination of the Ohio Supreme Court by The New York Times found that its justices routinely sat on cases after receiving campaign contributions from the parties involved or from groups that filed supporting briefs. On average, they voted in favor of contributors 70 percent of the time.

In the 12 years that were studied, the justices almost never disqualified themselves from hearing their contributors' cases. In the 215 cases with the most direct potential conflicts of interest, justices recused themselves just 9 times.

Judges are required by codes of judicial ethics to disqualify themselves whenever their impartiality might reasonably be questioned over financial or other conflicts.

"There is a lot more to the story than the cold numbers suggest," said Justice Maureen O'Connor, a Republican who voted for her contributors 74 percent of the time. Some cases are more significant than others, she said. Similarly, she and other justices criticized the decision to omit from the study the court's terse rulings on whether to hear a case at all.

But Justice Pfeifer, who voted for his contributors 69 percent of the time, backed the study's methodology. "I quite frankly can't think of another way," he said. "You're using the only yardstick that I'd know of that you can use."

Interest groups on the other side give, too, and the justices they support overwhelmingly vote their way. But Justice Pfeifer says the balance of financial power has shifted to business groups.

"I don't care how well a trial lawyer does or how big a pot a labor union has," he said, "they can't begin to match the business corporations. It's not a fair fight."

In 2002, Lt. Gov. Maureen O'Connor, a Republican, won a seat on the court, replacing a more liberal Republican justice and altering the balance. Her campaign took more than $330,000 from affiliates of insurance companies and medical groups. Not long after she joined the court, Justice O'Connor wrote the opinion that overruled the 1999 insurance decision. Only four years after the court ruled that employers' insurance policies covered many off-the-job injuries, it reversed course. "It serves no valid purpose to allow incorrect opinions to remain in the body of our law," Justice O'Connor wrote for the majority. The vote was 4 to 3.

In the next three years, after the rise of the court's conservative wing, their success rate dropped to 17 percent.

Affiliates, employees, officers and directors of the Cincinnati Insurance Company, for instance, gave more than $200,000 to Ohio Supreme Court candidates from 1998 through 2004.

"They're out soliciting the next million dollars to beat me," he said. "The insurance industry, the manufacturers and now the doctors treat the Ohio Supreme Court as a personal piece of property." (Justice Pfeifer)

**40. In an article dated March 19, 2009, titled *Chief Justice Maureen O'Connor- Says***

***Campaign Money Doesn't Affect Her* appear the following excerpts and the**

**article is attached as Exhibit 6:**

"By 2002, there was talk of a new reform. This time, the GOP — whose war chest was well fed by doctors and insurance companies — wanted to ensure that donors won the 25-year struggle. In order to do so, the two available Supreme Court seats had to be filled with yes-men.

Though O'Connor hadn't handed down enough decisions to make her politics obvious, she telegraphed all the right messages. "I will not legislate from the bench," she frequently announced.

"She said those magic words," Pfeifer says. "Sometime after I went on the bench, those became the magic words — the code for 'I'll be fine with anything you pass through the legislature' — that the business interests, which contribute heavily on the Republican side, want to hear."

Soon, O'Connor found herself rolling in the cash. In just eight months, she raised $1,736,852, according to campaign finance records. Over $550,000 came from doctors and insurance companies.

Meanwhile, corporate interest groups helped her on the side, running their own campaigns outside of the perimeters of election law. Among them was White Hat Management magnate David Brennan's group, Informed Citizens of Ohio. A proponent of for-profit education, Brennan paid over $2 million for pro-O'Connor TV ads.

Insurance companies also launched ads arguing that excessive damage claims were the reason for rising premiums. They claimed that if O'Connor wasn't elected, bloodsuckers would have a field day, winning outrageous damage claims and driving business out of Ohio.

Still, these cases often found themselves in the shadow of her allegiance to doctors and insurers.

In November 2003, O'Connor caught flak for being the featured lunch speaker at a conference sponsored by the Ohio State Medical Association. As doctors munched on spring mix and poached salmon, O'Connor proudly announced: "What I will never forget and always want to recall in sharp focus is the support I received from physicians in the state of Ohio."

A supposedly unbiased judge, O'Connor seemed to be acknowledging her indebtedness to those who placed her on the court. She says otherwise. "There was no message that doctors were in any special or preferred position. There is no evidence to even support that there is some preferential treatment of the medical community. There is nothing that would back that up."

Her record doesn't fully agree.

In 2005, Taft signed a new tort-reform bill. It limited what people could win for the future costs of their injuries, such as medical care and reduced job opportunities, to $350,000.

But last December, Ohio ruled against Arbino. O'Connor went along.

The diligence she'd shown in previous decisions was suddenly absent. It didn't matter that her own court had twice found such limits unconstitutional before. And though she had previously found time limits arbitrary, she somehow didn't have the same problems when it came to cost.

Justice Pfeifer called out O'Connor and the rest of the bench. "Was there ever any doubt how this case would come out?" he wrote. "This is a sad day for our Constitution

and this court. And this is a tragic day for Ohioans, who no longer have any assurance that their Constitution protects the rights they cherish."

Others seemed to discover that bankrolling O'Connor could pay off.

In just the first two months of 2008, O'Connor has already raised $209,000, according to campaign finance reports. Most of that came from doctors and insurance companies."

41. These two articles reflect the magnitude of the influence of the medical industry on Chief Justice Maureen O'Connor. And, an Ohio Justice at the time on the article, Justice Pfeifer agrees with everything contained in this complaint pertaining to that influence.

42. So often times in our political and even every day social discourse, Americans, politicians, lawyers and every day citizens are asked to ignore the obvious and accept lies in order to provide the illusion of civility.

43. A famous historical example is Galileo. Despite knowing the Earth orbited the sun, Galileo was forced by a Pope to confess what he knew to be true as false and declare for the world the Sun orbited the Earth. All in the name of conformity and civility.

44. In addition, our American politicians, institutions, lawyers, judges, corporations and media outlets become compromised. To dismiss it as simply the way it is, is wrong when the Plaintiffs suffer from it.

45. It defies all logic, all common sense and is insulting for Americans and Ohioans to be asked to believe MONEY does not influence politicians, judges and lawyers.

46. Those who receive the campaign contributions, including Chief Justice Maureen O'Connor, will proclaim it does not. They will claim they can't be bought, they are independent, they raise money within the rules and law, they simply have the same

14

ideology as those who give and will offer many more explanations. They ask us to accept this. We cannot.

47. Yet, when does a contributor's interests and a receiver's interest conflict? The answer is not often. While a receiver can say I voted here on this issue against the contributor, by and large, the contributor and receiver each receive what they seek. The receiver receives money for a campaign, the contributor the receivers support for the contributor's interest. The prior referenced articles reflect this reality. Other Ohio Supreme Court Justices have publicly admitted it in those articles. In other words, those Justices agree what affiant claims exists in the affidavit.

48. It is the assertion of Plaintiffs that the Ohio Supreme Court Chief Justice Maureen O'Connor is a judge who is compromised and influenced by her campaign contributors and factors those interests into her decisions and has in the Dr. Durrani cases, including her appointment of Judge Mark Schweikert and his admitted orders he has received from her. For anyone to review the affidavit and this lawsuit and claim to us and our 528 clients otherwise is not credible. To ask this Court, Plaintiffs, Deters Law or anyone to believe there is no undue influence on Chief Justice Maureen O'Connor is to ask all the equivalent of believing the world is flat. When that undue influence adversely affects Plaintiffs' claims, it is an actionable issue.

49. It's not criminal. It's not unethical. But, it's fact. And it's a fact which is not acceptable to Dr. Durrani's victims. Impartiality is critical for our civil justice system. The Plaintiffs deserve an impartial judge. A Common Pleas judge from outside the Hamilton County, Southwest Ohio is who they deserve. Judge Sargus

15

was perfect. Whoever it is or whoever they should be should not be connected to the medical establishment.

50. The influence of the medical establishment is nowhere more obvious than Chief Justice Maureen O'Connor's *Ruther* decision she wrote which found the medical statute of repose for four years constitutional when a less restrictive statute of repose years earlier was found unconstitutional. The statute of repose is front and center in over 100 Dr. Durrani cases. Judge Schweikert's rulings on that issue along with other evidence of bias and prejudice described herein triggered the affidavit because those rulings as described further in the affidavit and here reflect the influence to which Plaintiffs object and revealed the bias and prejudice.

51. It's common spiel that any Court can state that the Republican legislature wrote the statute of repose and if they wanted a fraud exception they would have put it in the statute of repose.

First, if the legislature did not think of something, does that mean a Court does not address it?

Second, the legislature in the statute of repose did not state... we will not have a fraud exception.

Third, the Savings Statute covering Civil Rule 41 was passed by the legislature just like the Statute of Repose. Guess which statute was amended last? The Savings Statute. And, the Savings Statute did not add a Statute of Repose exception. Judge Mark Schweikert is ignoring the law. His legal analysis on the issue ignores all the law on the issue and his decision on it is a single page. It is frightening and

maddening. He's ignoring ALL in **Exhibit 7**. **Exhibit 7** is a recent decision where

he ignores all relevant law outlined in **Exhibit 8**.

52. Justice Pfeifer's dissent in *Ruther* is applicable to the Dr. Durrani cases and this

Complaint because it outlines the medical industry's influence on Chief Justice

Maureen O'Connor. J. Pfeifer dissenting Chief Justice Maureen

O'Connor's *Ruther* decision:

Early in law school, every student is introduced
to the rich historical tradition and critical importance of
the common law in our nation's development. Today,
American judges and attorneys are invited to assist
both developed and developing countries in applying our
common-law traditions, which date back centuries in
England, to their efforts in empowering their courts to
protect basic and constitutional human rights without
interference from political leaders and legislative bodies
or their military establishment. The power of every citizen
in the United States to seek redress in our open courts
for injury done, be it by our government, another citizen,
or a large corporation, is a source of some amazement
and great envy in many parts of the world. That the
resulting decisions by judges and juries are respected
and enforced without police or military intervention
is incomprehensible in some quarters. Protecting our
citizens' individual fundamental constitutional rights from
attack by the government is the proud duty of the
American judiciary and a part of our oath.

The case of Ruther v. Kaiser, rolled out amidst
a blizzard of announcements by this court, will be of
little immediate notice, except to the parties, the medical
community, and a small, specialized element of the bar.
Over time, however, Ruther will come to be known
for the profound damage done to every Ohio citizen's
constitutional right to remedy in open court for an injury
done him in his land, goods, person, or reputation. Ohio
Constitution, Article I, Section 16.

The sweeping language employed by the
majority in this case is the crescendo in our court's
decade-long deference to, and acceptance of, the General

Assembly's assault on our citizens' right to remedy set forth, without alteration, for over two centuries in the Ohio Constitution.

When is a fundamental right, contained in the Ohio Constitution and Bill of Rights since 1802, no longer the individual right of an Ohio citizen? According to this court, whenever the Ohio General Assembly chooses to extinguish the right, it will no longer exist, period. The majority writes:

A plain reading of Article I Section 16 reveals that it does not provide for remedies without limitation or for any perceived injury. Rather, the right-to remedy clause provides that the court shall be open for those to seek remedy "by due course of law." (Emphasis added.) Article I, Section 16 does not prevent the General Assembly from defining a cause of action.

Majority opinion. In case the reader did not understand the breadth of the majority's devastating proclamation, it continues: "Thus, the General Assembly has the right to determine what causes of action the law will recognize and to alter the common law by abolishing the action, by defining the action, or by placing a time limit after which an injury is no longer a legal injury." Majority opinion,

Under Ruther, we now fully abdicate our solemn duty to enforce and protect constitutional rights afforded citizens since the beginning of statehood. If the General Assembly abolishes a remedy, including those recognized at common law when the constitution was written, it is now clearly within its power. We will afford "great deference" in presuming constitutionality of any act of the General Assembly limiting or abolishing a cause of action.

Continued erosion of the venerable right of every citizen to a remedy in open court for injury done will inevitably flow from the General Assembly. It may come in small drips or in tidal waves, but it will come. The economic interests pushing limitations on causes of action are just too powerful and too seductive for the General Assembly to resist. We have now removed the Assembly's only dam against the onslaught: this court's

18

previous vigorous enforcement of the "right to remedy" constitutional protections.

When Timothy and Tracy Ruther sought a remedy in open court for injuries suffered because of a doctor's failure to properly respond to three elevated liver-enzyme tests taken more than a decade before Timothy developed a fatal liver lesion and hepatitis C, they could never have envisioned the damage their case would ultimately cause for generations of Ohioans yet to be injured. Their personal tragedy has evolved into an undiscovered nightmare for legions of Ohioans who will find the courthouse doors barred for the presentation of their future legitimate injury claims.

I dissent.

53. The Dr. Durrani cases are EXACTLY what Justice Pfeifer warned would happen.

54. However, while the statute of repose may be considered constitutional by Ohio

Supreme Court decision despite it clearly NOT being constitutional, there are

numerous facts and law which limit its application in the Dr. Durrani statute of repose

cases. It is not "four years and too bad." That is how Judge Mark Schweikert sees it.

The relevant issues around the statute of repose includes the following:

A. Tolling Statute
B. Savings Statute
C. Fraud Exception
D. Foreign Body Exception
E. Continuous Treatment
F. Independent Acts of Malpractice
G. Claims not covered by the statute of repose such as fraud, consumer protection, negligent credentialing and retention, and Ohio Civil RICO.

55. It is obvious and clear, Judge Mark Schweikert, Chief Justice O'Connor's appointee

is a rubber stamp to a blanket SOR argument rather than a proper and impartial

assessment of A-G above. There is no greater proof of this than Judge Schweikert's

abuse of discretion in not granting timely and proper Motions to Amend on cases

where discovery has not even taken place and under clearly established Ohio law is an abuse of discretion. It is preposterous.

56. **Appealing biased and clearly wrong rulings is not a fair remedy to Plaintiffs. A fair and impartial trial judge is. Plaintiffs have a constitutional right to a fair tribunal. They do not have one in Judge Mark Schweikert because of Chief Justice Maureen O'Connor.**

57. Plaintiffs continue to be harmed by the state Ohio civil justice system which has failed them over and over again. We do not believe it is a coincidence. A history of the litigation is relevant for context.

## VII. HISTORY AND CONTEXT

58. Plaintiffs had to move to remove Chief Justice O'Connor's appointee Judge Guckenberger when we learned Mike Lyon, Dr. Durrani's counsel, and he were improperly communicating ex parte by email. Judge Guckenberger chose to resign after we sent him the affidavit of disqualification.

59. Every Judge, except Judge Robert Ruehlman, the only duly elected judge who had the cases, has violated the Ohio two and three-year case closure requirement if a case is designated complex. What remedy does Ohio Civil Justice system provide to our clients? None.

60. If Judge Ruehlman was left alone, these cases would have been settled in 2016.

61. The Defendants then failed in their challenge of the consolidation of these cases with Judge Ruehlman. They took that all the way to the Ohio Supreme Court.

62. The Defendants then failed in their attempt to remove the cases to federal Court. That took a year but it bought them the time to delay Judge Ruehlman's Order.

63. The Defendants then turned to the writ process. This failed at the First District, but succeeded at the eleventh hour at the Ohio Supreme Court. This is the same Supreme Court who earlier had left alone the First District ruling validating the consolidation. It made no sense.

64. The Defendants then failed in their attempt to bind the cases up in the First District.

65. Medical Protective, Dr. Durrani's insurance, also tried to cheat our clients out of coverage. They failed there too, but that was in federal court.

66. After not receiving a fair shake in Butler County by any of the Chief Justice O'Connor appointed Judges, Deters Law moved all the Butler County cases to Hamilton County knowing they were before the one fair judge. Judge Ruehlman. He is a Republican, by the way. Based upon Judge Robert Ruehlman's December 15, 2015 Order, Deters Law move slowed nothing down. He set all cases for trial in 2016 and 2017.

67. Why did the defense take all the above referenced actions they took? They did not like Judge Ruehlman's December 15, 2015 Order. It was their prerogative to do so. Just like what we are doing is ours.

68. It also must be pointed out that the ONLY reason the consolidation failed was Administrative Chief Judge at the time, Robert Winkler NEVER held a hearing on our Motion to Consolidate and NEVER signed the Order. Why? To this day, Plaintiffs have no idea why he did not do his job as the Chief Administrative Judge at the time. Plaintiffs were harmed by his not doing so.

69. After the Judge Ruehlman's consolidation came apart, Plaintiffs accepted the duly elected fourteen (14) Common Pleas judges less those few who recused. The cases

were moving.   Plaintiffs had trials set in April (*Mann*) and June 2017 (*Potts*) with

Judge Ruehlman.  Despite these cases being ready since then, Judge Mark Schweikert

has refused to set these cases for trial.

70. In addition, under the current scheduling order of trials, Judge Schweikert expect

Deters Law to prepare three trials at a time.  We welcome that.  But, he fails to

provide a mechanism to try those cases if one goes to trial.  We will have wasted our

time preparing for three.

71. When Plaintiffs tried to fix the consolidation issue not of our making after the Writ,

Judge Ruehlman, Chief Judge in 2016, and Judge Marsh, Chief Judge in 2017, were

afraid to do so.  Why?  To this day, Plaintiffs have no idea why.  It was obvious to

Deters Law based on what they said on the record they feared the Chief Justice if they

properly consolidated the cases to one or the other of them.

72. Out of nowhere, Plaintiffs then suffered an "alleged" request from Judge Marsh to

request a Special Judge.  She also stayed all the cases.  It was out of nowhere, a total

surprise, and blocked Judge Ruehlman from trying the first two cases *Mann* and

*Potts*.  Plaintiffs allege that was the point of the request and stay.

73. Plaintiffs state "alleged" request by Judge Marsh because a credible witness inside the

Hamilton County courts informed us that the request did not come from Judge Marsh

and the Common Pleas Judges, but from the Chief Justice.  Judge Marsh told our

witness that is how it went down.  **Therefore, Plaintiffs assert and allege, Chief**

**Justice Maurren O'Connor improperly injected herself and took the cases away**

**from the duly elected judges of Hamilton County not at their request, but by the**

**Chief Justice command.**

74. The Chief Justice inserted herself and Judge Marsh complied by drafting and sending with a feigned letter claiming she and all the Hamilton County Common Pleas judges sought a Special Judge.

75. Plaintiffs were then left with accepting Judge Jennifer Sargus who Chief Justice O'Connor appointed. Based upon Judge Sargus' public statements, she and Chief Justice O'Connor are close and the Chief Justice appoints her as an assigned Judge on many occasions.

76. After six months and one hearing, Judge Sargus left the cases and without any reason told to Deters Law or Plaintiffs. Our repeated requests for a reason were ignored.

77. Plaintiffs based upon what happened after Judge Sargus resigned, believe she may have refused to do the Chief Justice's bidding.

78. As average Americans, Plaintiffs understandably believe the "fix is in" and they are being victimized by the Ohio Civil Justice system after being victimized by Dr. Durrani with unnecessary spine surgeries.

79. Proof of the Plaintiffs' concerns include not only everything which is outlined above and here, but the following:

**Not ONE Judge, other than the Judge removed from the cases by Chief Justice O'Connor, Judge Robert Ruehlman, EVER has properly taken action for Dr. Durrani fleeing the country and refusing to give a deposition:**

**A. Judge Guckenberger**
**B. Judge Bessey**
**C. Judge Schweikert**

**They all chose punishing Dr. Durrani victims, not Dr. Durrani. In the history of American Jurisprudence, it is one of the most perplexing and impossible facts to**

23

understand. **The ONLY rationale this is the way it is must be the bias and prejudice of Defendants caused by the medical industry influence.**

80. Also, no Court has ever decided Judge Ruehlman's December 15, 2015 Order was wrong. Not one. The fact the consolidation was undone by the Ohio Supreme Court did not change this fact because the Ohio Supreme Court did not hold Judge Ruehlman ruled wrong on any issue. The Supreme Court simply ruled the consolidation was no more. Judge Ruehlman's Order overruled all the Dr. Durrani Defendants' motions and the Order was still binding on less than a dozen of cases he still had after consolidation was reversed.

81. What is common to all these judges besides Judge Ruehlman? They were appointed by the Chief Justice to handle these cases. Judge Sargus never made a ruling on a sanction. She recused. Regardless of why she left the cases, Plaintiffs deserved to know, even if it was a general "health" or "personal" issue. They were never given that request. Again, how should Plaintiffs feel about that? The Defendants? They have not been adversely affected one bit by all these delays and injustice. They operate business as usual. Plaintiffs suffer and forty have died during the pending of this litigation.

82. Plaintiffs speculate Judge Sargus, upon diving into the cases, was not able and unwilling to carry out directives Chief Justice Maureen O'Connor gave her and she either resigned or was asked to resign.

83. Every Judge appointed by Chief Justice O'Connor has also refused group trials. Judge Ruehlman planned them. Group trials are clearly allowed under First District case law in *Suida v. Howard.*

84. Deters Law has had cases ready for trial for years like *Potts, Stratman, Mann*, which continue to be ignored for trial by Judge Schweikert. These cases could have been tried last month or this month.

85. Most concerning, relevant and factual is Judge Schweikert has repeated over and over again about what his orders are from the Chief Justice. He has done so on and off the record. All Deters Law lawyers working on the cases have heard him. There is hearing transcript proof. What are those orders? Plaintiffs want to know. Plaintiffs plan to find out. Plaintiffs have requested Judge Schweikert preserve all communications between he and the Chief Justice. It appears those orders are to take a machete to the cases. It also raises the issue whether or not the Chief Justice, who will be hearing Dr. Durrani cases in that capacity and has heard cases in that capacity is involved in deciding issues at the Common Pleas level. It is a serious, but justified concern based on Judge Schweikert's own statements. **For purposes of this pleading, Plaintiffs make that factual allegation. Chief Justice Maureen O'Connor has informed and does inform Judge Mark Schweikert how to rule on issues before him and he has followed her orders. Accepting that as true for pleading purposes, this Court must protect the Plaintiffs' rights.** Plaintiffs have no control over the communication between Chief Justice Maureen O'Connor and Judge Mark Schweikert but Judge Schweikert acknowledges he checks with her and communicates with her on a regular basis. Why should that NOT concern Plaintiffs and Deters Law, especially when the fastest way to "get rid of a case" is dismiss it. And Judge Mark Schweikert is not moving trials along. Judge Mark Schweikert

has trials "ready to go" not going until the end of June. This is seven months from

when they were set. All of this was an accommodation to the defense.

86. One of Judge Mark Schweikert's on the record references to Chief Justice Maureen

O'Connor on December 4, 2017. Judge Schweikert stated on the record:

> "I told you that I was going to confirm with the – with the Supreme Court and
> with the Hamilton County Court of Common Pleas on what my authority was to move
> those cases forward. And, so far, I've been told that I should expedite these things.

> "my instructions are to get these done. And, you know, I'm concerned that we're
> not moving along as quickly as those who have given me this task expect me to
> move. So I'm just giving you that warning."

**Machete time.**

87. After receiving an appointment, a Judge such as Mark Schweikert should have NO

reason to communicate with the Chief Justice who appointed him about issues the

appointed judge is hearing and should not be told to dismiss any case he can and told

how he must rule.

88. Based upon ALL of the above, no Dr. Durrani client and no attorney representing

them would ever believe the Dr. Durrani victims are being treated fairly and both

would have concerns. Every single citizen of America would be appalled how Dr.

Durrani's victims have been treated by the system and those in it while Dr. Durrani is

coddled by the same system.

89. On the other side of Plaintiffs are the largest and most powerful law firms in

Cincinnati and their clients who are not only the largest and most powerful Cincinnati

employers, but part of the largest and most powerful lobby in Ohio… the healthcare

and insurance industry. The same contributors to Chief Justice Maureen O'Connor.

90. Dr. Durrani performed unnecessary spine surgeries on over five hundred victims we represent. There were no doubt thousands. He then escaped criminal prosecution. Then, with his flight, Dr. Durrani attempted to cheat his victims out of malpractice insurance coverage. Finally, Dr. Durrani refused to participate in civil litigation. Rather than be punished or sanctioned for his conduct, he has been rewarded by not being punished or sanctioned. Judge Schweikert forced us after four years of his refusing depositions to work with Dr. Durrani's counsel to NOW try to schedule him. Yet another delay tactic Judge Schweikert has endorsed which reflects his complete bias and prejudice against the Defendants.

91. In addition, the hospitals made an extraordinary amount of money from Dr. Durrani's surgeries. The hospitals also benefit from the lack of sanction of Dr. Durrani. West Chester even paid the government back $4.2 million dollars as a settlement for unnecessary surgeries.

92. Meanwhile, Plaintiffs have suffered on every level- physically, mentally and financially. Deters Law has fought their battle with extraordinary time, money, resources, risk and stress as the Dr. Durrani Defendants have benefited from tentativeness and delay. Dr. Durrani Defendants have operated their businesses without a hitch during the litigation. The Dr. Durrani Defendant law firms have been rewarded with incredible legal fees based upon their self-serving recommendations.

93. Justice and fairness for Dr. Durrani victims should have never been this difficult. It's not just injustice. This story is an indictment of the medical, insurance and legal establishments. The same establishments who control Chief Justice O'Connor and

the legal establishment she controls. No rational American who reads the affidavit or this pleading would not agree with the assertions in it.

94. February 2018 will be five years when the cases came pouring in to Deters Law. For five years, Deters Law have had to been there for 528 clients calling, texting, emailing and messaging in need of our assistance with medical treatment referrals, desperation, evictions, foreclosures, collections, hopelessness, wanting to give up and take their own life, pain, medicine issues, relationship issues, divorce and death.

95. **It is also quite bizarre in Judge Schweikert's decisions how he references "we" throughout. Who is the "we?" Is that the Chief Justice? Who is the "decider" as Judge Schweikert uses "we?" Plaintiffs assert Judge Schweikert is deciding these cases at the Common Pleas level with Chief Justice O'Connor.**

96. **Plaintiffs have a legitimate concern based upon facts and circumstances to believe Judge Schweikert has been instructed by Chief Justice O'Connor to dismiss any case for any reason he can and Plaintiffs do allege that has in fact occurred.**

97. **In addition, in a letter Plaintiffs received from a hospital defense lawyer, on December 12, 2017, the lawyer claims to KNOW how Judge Schweikert is going to rule on all motions based upon their own admissions. He admits it in a letter. He states:**

"**Once all our Motions are granted (and we fully expect them to be granted)...**"

This letter is attached as **Exhibit 9.**

## ATTACKS ON JUDGE ROBERT RUEHLMAN

81. The attorneys representing the Defendants actually stated the following regarding Judge Robert Ruehlman in the public record. Paul McCartney, in open Court and one of Dr. Durrani's lawyers, told Judge Ruehlman the Defendants planned to file Writs against him. They also accused Judge Ruehlman from having improper meetings, bias and he had a duty to avoid even the appearance of impropriety. Plaintiffs are confident the Defendants while probably being "outraged" with this filing forget what they said and did to Judge Robert Ruehlman. They are allowed to raise issues of a presiding judge and Plaintiffs are not? The Affidavit of Disqualification is allowed by the rules and law. Everything in it is true or alleged in good faith.

### JUDGE GUCKENBERGER

88. Judge Guckenberger, by Chief Justice O'Connor's appointment, handled the cases from Butler County at the request of the Butler County Common Pleas judges.

89. Judge Guckenberger's trial sanction was to inform the jury Dr. Durrani "elected not to be there" at the trial. In addition, he informed the jury that IF Dr. Durrani tried to attend the trial he would not be able to attend because he refused to give a deposition.

90. There is no word more applicable to this than absurd. Why? Judge Guckenberger knew Dr. Durrani was a fleeing felon in Pakistan and had no intention of returning to the United States and furthermore, if he did, Plaintiffs wanted Dr. Durrani at trial. Judge Guckenberger's sanction was a sanction against Plaintiffs.

91. In addition, Judge Mark Schweikert stated at a hearing he wanted to talk to Judge Guy Guckenberger. Having recused himself, this is highly improper.

**JUDGE BESSEY**

91. Judge Bessey was appointed by Chief Justice Maureen O'Connor and

immediately at a hearing stated his intention was to follow everything Judge

Guckenberger ordered, including the same trial sanction. After Plaintiffs Rule

41(a) cases and refiled them in Hamilton County, Judge Bessey transferred his

remaining cases to Hamilton County.

**JUDGE MARSH**

92. On February 2, 2017, Judge Melba Marsh signed an Order stating as follows:

In light of this Court's pending request to the Chief Justice of the Supreme Court
of Ohio to assign a visiting judge to oversee and manage the multitude of Durrani
cases currently pending in Hamilton County, it is hereby ordered that all active
future court dates and all pending motions are hereby stayed and held in abeyance
until the Chief Justice appoints a visiting judge or denies the request. Counsel of
record will be notified promptly of the Chief Justice's decision.

93. This Order stopped two trials going forward in Judge Robert Ruehlman's Court in

April and June 2017. Plaintiffs assert that was one of the goals of the Chief

Justice Maureen O'Connor. Dr. Durrani Defendants did not want those trials to

go forward in Judge Ruehlman's Court.

94. On February 2, 2017, Melba Marsh wrote the letter to Chief Justice O'Connor:

Re: Request for the Assignment of a Visiting Judge to Oversee Durrani Cases

Dear Chief Justice O'Connor:

I am writing you in my capacity as the duly elected 2017 Administrative Judge of
the Hamilton County Court of Common Pleas, General Division, and as the
Presiding Judge of the Hamilton County Court of Common Pleas.

As you know, you previously appointed a visiting judge at the request of the
Butler County Court of Common Pleas to handle the numerous medical
malpractice lawsuits that were filed in Butler County against Dr. Abubakar Atiq
Durrani, the hospitals where Dr. Durrani performed surgery, and other
Defendants.

30

Hamilton County currently has 267 active Durrani cases, many of which have been transferred from Butler County or dismissed in Butler County and re-filed in Hamilton County. In addition, there are a handful of cases where hundred of plaintiffs are included under one case number. The Deters Firm, who represents many Durrani plaintiffs, has indicated in their filings that they represent roughly 500 Durrani plaintiffs in Hamilton County cases.

Currently, three of the 15 Hamilton County Common Pleas General Division judges have recused themselves from a Durrani cases. All of the remaining 12 Hamilton County Common Pleas General Division judges are assigned Durrani cases.

Many of the motions filed in the Durrani cases that tough on consolidation reveal that attorneys for both sides agree that having a single judge manage the cases for discovery purposes and to rule on common questions of law such as the statute of repose, has merit. In my opinion, however, it would be difficult if not impossible for any sitting Hamilton County Common Pleas judge to oversee all of the Durrani cases even for preliminary purposes. Even with the Durrani cases distributed among the 12 judges who have not recused, the number of plaintiffs and potential number of trials in these matters will disrupt the court's dockets and might result in inconsistent rulings. Given the volume and complexity of the cases, the ongoing transfers of additional Durrani cases from Butler County, and to avoid inconsistent rulings, duplicate proceedings and unnecessary costs and delays, I am hereby requesting that you assign a visiting judge to manage the Durrani cases.

I have consulted with each of my colleagues who are currently assigned Dr. Durrani cases, and all 12 judges agree that the cases should be heard by and assigned to a visiting judge. For all of the foregoing reasons, I hereby respectfully request that you assign a visiting judge to oversee all of the Durrani cases currently pending in Hamilton County as well as any Durrani cases that may be filed in or transferred to Hamilton County.

This letter is attached as **Exhibit 10.**

95. **Plaintiffs assert this letter was not true. Based upon our credible witness, we assert Chief Justice Maureen O'Connor contacted Judge Marsh and demanded this letter. This letter is not true. We do not need to put on proof to make the assertion. We simply want the Court to know we have a credible witness we trust, which allows us to make the assertion. We have proof.**

96. What follows is full content of a series of letters which reflect how Deters Law, on behalf of Plaintiffs, expressed over and over again the concern that who Chief Justice Maureen O'Connor would appoint would be biased towards Plaintiffs. Their concern has been justified as Judge Mark Schweikert has revealed himself. **On February 2, 2017, Matthew J. Hammer wrote a letter copied to all counsel to Chief Justice Maureen O'Connor which states in its entirety:**

Dear Chief Justice O'Connor:

On behalf of 528 Plaintiffs, we object to Judge Marsh's request. Our clients have had their justice delayed long enough: four years. We had cases moving now, as reflected by the attached calendar. Assigning a Visiting Judge would delay trials and justice for another year.

What's really frustrating is that the cases were consolidated under ONE judge for a year and they would have ALL been tried or in trial right now. The Order attached.

What is most shocking. Everything Judge Marsh states is why we asked the cases to be consolidated under ONE judge in the first place. The Defendants objected to consolidation before any judge. Also, not one Judge we have been appearing before indicated a desire to give up their cases.

The judges of Hamilton County should keep these cases. They are equally divided among the judges.

We reserve the right to supplement this. We wanted to object immediately.

96. **On February 3, 2017, Matthew J. Hammer sent a letter to Chief Justice Maureen O'Connor, copied to ALL defense counsel which stated in its entirety:**

Dear Chief Justice O'Connor:

This is a follow up to our letter late yesterday afternoon based upon the importance of the issue and our inability to know the Court's time frame for responding to the request.

It also is as the advocate for the 528 Plaintiffs who have filed cases with affidavits of merit. We ask for the Court's understanding of our obligation on their behalf to advocate their position regarding Judge Marsh's letter.

Before outlining the history, we want to make our main points which the history supports:

1. Any action by the Court which delays trials is not fair to the Plaintiffs.

2. We strenuously object to the Court appointing a visiting judge without all the parties consent.

The Plaintiffs have a right to have their cases decided by duly elected judges by voters in Hamilton County who have been randomly selected for each case.

**For the Court to appoint a judge or judges to decide major issues means the Court decides the course of the litigation by the person it chooses. We are not naïve. WHO is chosen matters. Unless the parties and their counsel AGREE, the Court should not force a judge upon the parties and counsel over the duly ELECTED judges.**

There are 12 competent elected judges managing their Dr. Durrani cases just fine as indicated by the rolling calendar we keep and we provided yesterday.

Neither party was asking for Judge Marsh's request. In addition, as we stated yesterday, we were the one advocating consolidation from the beginning. After the following history, we state our suggestions and recommendations.

97. On February 17, 2017, Maureen O'Connor appointed Jennifer Sargus to "hear

cases involving defendants Abubakar Atiq Durrani, et al, and to conclude any

proceedings in which she participated." Based upon the fact she was outside the

area, had no connections to the Dr. Durrani Defendants and our inquires with

attorneys who practiced before her, we concluded Judge Sargus would be a fair

judge to the Dr. Durrani victims. We did not object. The fact we did not object to

Judge Sargus has NO bearing on what was revealed regarding Judge Mark

Schweikert. Plaintiffs have a right to not object to a judge they believe fair and

impartial and object to one who is. Plaintiffs had no connection to Judge Sargus.

33

98. On February 27, 2017, Matthew J. Hammer sent a letter to Chief Justice

Maureen O'Connor copied to ALL defense counsel, which stated in its

entirety the following:

Dear Chief Justice O'Connor:

We met with our clients this past week. They had a lot of questions regarding
Judge Marsh's request. We had copied it to them and our response. Our clients
are justifiably feeling mistreated that after consolidation is dissolved and they
accept going forward with twelve elected judges, there is now a request for a form
of consolidation with a visiting judge.

This has failed twice before. A visiting judge is not answerable to anyone but
you. They are paid by the hour and have no incentive to move the cases along. If
they come from another area of the state, time and distance is an issue. Finally,
they have to catch up on all the issues. Furthermore, it is hypocrisy we sought
consolidation, the defense fought it, and now they don't oppose a visiting
judge. The fact the defense do not object to a visiting judge further proves our
point. They are for anything which delays trials.

**Our clients deserve better. Their trials have been delayed for years by the
defense. As we mentioned in our prior letter, there is no reason the twelve
(12) judges could not meet and agree on rulings on all major issues. Or, pick
from one of their midst a "lead" judge to hear the arguments and decide.**

The attached list of 55 cases were not only set for trial multiple times, discovery
was closed and is over in each case. There are requests in front of these twelve
judges to set these for trial right away. The Mann case is set for trial on May 15,
2017. The Wright case is set for June 26, 2017. We have filed Motions to Lift
the Stay on these before Judge Marsh.

We are also filing Motions to Lift the Stay on the other 53 cases which need to go
to trial ASAP. The results of which will probably end this entire litigation in a
settlement favorable to one party or the other.

99. The Hamilton County taxpayers and Plaintiffs deserve their duly elected judges to

handle their citizen cases. They do not deserve a biased special judge appointed

by a biased Chief Justice.

100.     On March 6, 2017, Matthew J. Hammer sent Judge Melba Marsh,

copied to ALL defense counsel the following email:

34

Your Honor:

Based upon the attached appointment of Judge Sargus, we have a question if you know the answer. Is she handling everything to the exclusion of the Hamilton County judges or is she going to oversee the cases with the assistance of the Hamilton County Judges?

100.    There was NEVER one response to one of the above referenced letters to

Chief Justice O'Connor and Judge Marsh. These letters and emails express all the

concern which is now revealed. The Chief Justice had every option of

communicating to all parties and express how she would ensure impartiality. She

did not. That would have been totally proper under the circumstances. Rather

than assuage Plaintiffs' concerns, Chief Justice Maureen O'Connor acted in a

manner consistent with not caring.

103.    Defendant Judge Mark Schweikert replaced Judge Sargus by appointment

of Chief Justice Maureen O'Connor. He was the Ohio Supreme Court lobbyist

with the state Judicial Conference. He was in all respects the Chief Justice

O'Connor's lobbyist to the state legislature.

104.    Mark R. Schweikert's entire career is one of Republican Party political

appointments mostly in the Court System. He sat for election for a Hamilton

County Common Pleas position once and won.

105.    When he retired from the Ohio Judicial Conference, Chief Justice

Maureen O'Connor had this to say about Judge Schweikert:

Schweikert received a certificate of recognition signed by Ohio Supreme Court Chief Justice Maureen O'Connor. Part of the text reads: "On behalf of my colleagues, it is an honor to recognize his dedication and diligence on behalf of the Ohio Judicial Conference as its executive director for the past 10 years. Mark's experience and insight into the judiciary ensured his leadership of the Judicial Conference would be meaningful and effective. Not only was he a

tremendous resource for judges, but also for legislators, as they sought information and understanding of Ohio's judicial system."

"Mark's experience and insight into the judiciary ensured his leadership of the Judicial Conference would be meaningful and effective," O'Connor said. "Not only was he a tremendous resource for judges, but also for legislators, as they sought information and understanding of Ohio's judicial system."

106.   **How can Plaintiffs not conclude Judge Mark Schweikert was someone Chief Justice Maureen O'Connor could trust to take a machete to the Dr. Durrani cases?  Docket control should never be unfair and unwarranted dismissals.  Plaintiffs should not be punished because Dr. Durrani and the Defendants harmed too many people.**

107.   The legislature Chief Justice Maureen O'Connor referenced in her praise of Judge Mark Schweikert is the same legislature who passed the statute of repose.  It's such a cop out to blame the state legislature, despite their cold-hearted statute of repose.  Courts are supposed to handle issues in and around all facts relative to a case by case basis.  The issues surrounding the statute of repose in these cases are NOT covered just by the statute of repose.  The United States, as Justice Pfeifer points out in his *Ruther* dissent, has an entire jurisprudence history of Courts protecting individual's constitutional rights.  If the Ohio legislature passed a law allowing slavery, Defendants would bless it as legislative action.  That is not an overstatement based upon what Defendants have written in decisions.

## VIII. CONCLUSIONS

108.   **The fact scenario described in the affidavit and this pleading reveals several basis supporting disqualification of Defendants:**

A. The medical industry influence on Chief Justice Maureen O'Connor.
B. The circumstances surrounding the "alleged" request for a special judge.
C. The mystery regarding the Judge Sargus departure.
D. The Chief Justice and Judge Schweikert collaborating on deciding issues at the Common Pleas level.
E. The sloppy cut and paste Orders, "we" references and complete misstatements of the law in the Orders prepared by Judge Schweikert. The Plaintiffs do not deserve cut and paste.
F. A hospital defense lawyer has admitted in writing to KNOW they are going to win every Motion that Judge Schweikert rules upon.
G. Improper consultation with a recused Judge.

109.  **Together, these seven issues warrant disqualification. Before those disqualifications are heard and to ensure Plaintiffs are not harmed irreparably in who rules or before those rulings, this lawsuit is necessary. Plaintiffs know this Court can't rule on disqualifications. Plaintiffs simply want the Court to protect the sanctity of the disqualification process.**

110.  Based upon the affidavit, Chief Justice Maureen O'Connor should recuse herself from all Dr. Durrani related litigation.

111.  Based upon the affidavit, Judge Mark Schweikert, her appointment, should also recuse himself from all Dr. Durrani litigation.

112.  **There are justifiable issues for federal jurisdiction under §1983 for violation of due process, detached tribunals, seventh amendment, equal protection under the 14th amendment access to justice and other constitutional issues.**

113.  The Chief Justice has broad powers to control dockets in Ohio. While she may possess that legal power, it does not mean that in the Dr. Durrani cases that power has been used fair and impartial to the Dr. Durrani victims. It has not. She cannot exercise that power to trample the constitutional rights of Plaintiffs.

## IX.  NEED FOR RESTRAINING ORDER AND INJUNCTIVE RELIEF

114.     There is no adequate remedy at law for Plaintiffs and Plaintiffs require the restraining order restraining Chief Justice Maureen O'Connor from ruling on the Disqualification of Judge Mark Schweikert and an Order restraining Judge Mark Schweikert from taking an action on the cases until such time there is a ruling on the Affidavit of Disqualification pertaining to him.  This is the request of Plaintiffs.

115.     Plaintiffs will be denied their rights to a fair tribunal.  Moreover, the public deserves a system where litigants do have a fair tribunal.  The need is urgent for court action on this pressing problem.  Only prompt action by this federal court will serve the public interest.

116.     The law for an Affidavit of Disqualification is found in ORC 2701.03. Section D(1) that statute states:  (1) Except as provided in divisions (D)(2) to (4) of this section, if the clerk of the supreme court accepts an affidavit of disqualification for filing under divisions (B) and (C) of this section, the affidavit deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding until the chief justice of the supreme court, or a justice of the supreme court designated by the chief justice, rules on the affidavit pursuant to division (E) of this section.

117.     Based upon this, Plaintiffs seek the relief requested.  Otherwise, in any minute, Chief Justice Maureen O'Connor could rule on Judge Mark Schweikert's Affidavit of Disqualification and Judge Mark Schweikert could keep signing Journal Entries and issuing decisions which will irreparably harm Plaintiffs.  In fact, Defendant Judge Mark Schweikert has no doubt already spoken to Defendant Chief Justice Maureen O'Connor about the Affidavit of Disqualification.

38

118.     Chief Justice Maureen O'Connor controls future assignments of Judge Mark Schweikert.

119.     Judge Mark Schweikert's appointment is the "fruit" of a "poisonous tree." But for the inappropriate request, he would have never been appointed.

120.     If Judge Mark Schweikert is disqualified, Plaintiffs plan other action relative to any legitimate request to replace him.

## CLAIM FOR RELIEF

### First Claim – 42 U.S.C §1983 – United States Constitution

121.     Defendants, acting under color of law, have violated rights secured to the Plaintiff including Plaintiffs' due process rights, a right for detached and impartial tribunal, right to trial on the 7th Amendment, Equal Protection, access to justice and other constitutional issues.

### RIGHT TO A FAIR AND IMPARTIAL TRIBUNAL

122.     **Due process requires a neutral and detached judge in the first instance. Before one may be deprived of a protected interest, one is entitled to due process of law to an adjudicator who is not in the situation which would offer possible temptation to the average man as judge, which might lead him not to hold balance, clear and true. Justice must satisfy the appearance of justice, even to the point of requiring trial by judges who have no actual bias. Concrete Pipe v. Construction Laborers 508 U.S. 602 (1993).**

123.     **A fair trial in a fair tribunal is a basic request of due process. Fairness of course requires an absence of actual bias in the trial of cases. In Re Murchinso, 349 U.S. 133 (1955).**

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court:

A. Issue a Declaratory Judgment that the issues raised in this case violate the constitutional rights of Plaintiffs:

B. Issue a temporary restraining order, preliminary and permanent injunction against the Defendants and all those acting in concert.

C. **Issue a temporary restraining order, preliminary and permanent injunction against Chief Justice Maureen O'Connor restraining Chief Justice Maureen O'Connor from ruling on the Affidavit of Disqualification pertaining to Judge Mark Schweikert.**

D. **Issue a temporary restraining order, preliminary and permanent injunction against the Judge Mark Schweikert restraining Judge Mark Schweikert not to take any action until the Affidavit of Disqualification pertaining to him is ruled upon.**

E. Award such other and further relief as this court shall deem just and reasonable based upon this Complaint.

Respectfully Submitted,

*/s/ Matthew Hammer*
Matthew J. Hammer (#0092483)
Deters Law
5247 Madison Pike
Independence, KY 41051
(513) 729-1999 Phone
mhammer@ericdeters.com
*Counsel for Plaintiff*

## VERIFICATION

The undersigned verifies the facts and allegations contained in this Verified Complaint.

*Matthew J. Hammer*

_____
Matthew J. Hammer

Subscribed and sworn before me by Matthew J. Hammer this _18th_ day of _December_
2017.

*Loretta Little*

_____
Notary Public

## CERTIFICATE OF SERVICE

I, Matthew J. Hammer, pursuant to 28 U.S.C. §1746, declare under the penalty of perjury under the United States of America that the following is true and correct.

1. I will give notice by email and phone to Chief Justice Maureen O'Connor and Judge Mark Schweikert as soon as this pleading is filed with the Court.

2. I cannot guarantee that Chief Justice Maureen O'Connor and Judge Mark Schweikert will receive the notice prior to this court setting a hearing for the Temporary Restraining Order.

3. This is of the essence since at any time a ruling could take place on the Affidavit of Disqualification filed late Friday with the Ohio Supreme Court Clerk's office.

/s/ Matthew Hammer
_____
Matthew J. Hammer (#0092483)

**EXHIBIT A**

| LAST | FIRST | CASE NO. |
|---|---|---|
| 1.  Aaron | Frieda | A1706463 |
| 2.  Adams | Patricia | A1506958 |
| 3.  Agee | Michelle | A1506571 |
| 4.  Allen | Jimmy | A1402537 |
| 5.  Allen | Katrina | A1700327 |
| 6.  Allen | Sherri Lynn | A1706403 |
| 7.  Applegate | Rebecca | A1706553 |
| 8.  Arnold | Brad | A1504450 |
| 9.  Arnold | George | A1706465 |
| 10. Ashcraft | Diana | A1706445 |
| 11. Atkins | Brian | A1706414 |
| 12. Atwell | Jonathan | A1706489 |
| 13. Augst | Thomas | A1506042 |
| 14. Ayres | Amanda | A1400578 |
| 15. Ayres | Amanda- Christ | A1502990 |
| 16. Bachmann | Gayle | A1506044 |
| 17. Bailey | Caidan | A1700298 |
| 18. Baker | Paul | A1504464 |
| 19. Baker | Nicole | A1706365 |
| 20. Ballinger | Jennifer | A1706480 |
| 21. Bartlett | Cindy | A1706599 |
| 22. Batsche | Laura | A1706512 |
| 23. Battista | Nicholas | A1706540 |
| 24. Baumgardner | Joseph | A1700289 |
| 25. Bayliss | Louise | A1602538 |
| 26. Beavan | Michelle | A1505423 |
| 27. Bechtold | Phyllis | A1706549 |
| 28. Beck | Judy | A1706494 |
| 29. Beckelhimer | Troy | A1404075 |
| 30. Begley | Nancy | A1706537 |
| 31. Beil | Cathy | A1302781 |
| 32. Beil | Terry | A1706579 |
| 33. Bender | Mackenzie | A1506577 |
| 34. Benge | Denise | A1504447 |
| 35. Benge | Nicholas | A1504454 |
| 36. Benjamin | Antoinette | A1600764 |
| 37. Benton | Shawnda | A1503378 |
| 38. Benton | William | A1706594 |
| 39. Bess | Denise | A1706442 |

**EXHIBIT A**

| 40. Beyer | Leona | A1706604 |
|---|---|---|
| 41. Billing | Trey | A1403074 |
| 42. Bishop | Edythe | A1506609 |
| 43. Bode | Anthony | A1402942 |
| 44. Boggs | Barbara | A1506302 |
| 45. Boggs | Kaitlyn | A1700307 |
| 46. Boggs | Kaitlyn- Children's | A1700333 |
| 47. Boland | Nancy (Stephanie Hawks) | A1706538 |
| 48. Bookman | Jennifer | A1706481 |
| 49. Boone | Patricia | A1706541 |
| 50. Borchers | Deena | A1706440 |
| 51. Botner | Doris | A1302782 |
| 52. Botner | Gerald | A1706602 |
| 53. Bowling | Arletta | A1601973 |
| 54. Bowman | Nancy | A1706608 |
| 55. Brackett | Penny | A1706548 |
| 56. Bradshaw | Latoya | A1601544 |
| 57. Brashear | Christina | A1506959 |
| 58. Braucher | Melissa | A1506956 |
| 59. Bray | Dominique | A1700315 |
| 60. Bray | Lindsey | A1706515 |
| 61. Breitenstein | Rebecca | A1306847 |
| 62. Brewer | Randal | A1706552 |
| 63. Brice | Sharon | A1706570 |
| 64. Britten | Carrie (Melvin James) | A1706528 |
| 65. Brophy | Michael | A1504460 |
| 66. Brorein | Eileen (Richard Brorein) | A1706556 |
| 67. Brown | James | A1706472 |
| 68. Bruce | Patricia (Richard Lozier) | A1706557 |
| 69. Brunner | Jonathan | A1706490 |
| 70. Burton | Kayla | A1505678 |
| 71. Buschur | Vicki | A1706590 |
| 72. Bushelman | Kathleen | A1700306 |
| 73. Buskirk | Annette | A1600234 |
| 74. Butler | Brenda | A1403489 |
| 75. Byar | Michele | A1706532 |
| 76. Callahan | Douglas | A1706452 |
| 77. Calligan | Patrick | A1401182 |
| 78. Campbell | Jan | A1505625 |
| 79. Campbell | Robert | A1506574 |
| 80. Carr | Andrew | A1505422 |

**EXHIBIT A**

| | | |
|---|---|---|
| 81. Chhun | Bunnavuth | A1706417 |
| 82. Chisman | Tonya | A1706586 |
| 83. Clark | Chris | A1302874 |
| 84. Cochran | Jessica | A1706482 |
| 85. Collins | John | A1504451 |
| 86. Compo | Elizabeth | A1706458 |
| 87. Conger | David | A1700310 |
| 88. Conger | Kenneth | A1505424 |
| 89. Conley | Brenda | A1706412 |
| 90. Conley | Dana | A1706427 |
| 91. Cook | Michael | A1700311 |
| 92. Coots | Gary | A1706464 |
| 93. Cotter | Jacob | A1406929 |
| 94. Couch | Jackie (Sandra Couch) | A1706567 |
| 95. Courtney | Eric | A1307859 |
| 96. Crail | Michael | A1706529 |
| 97. Crissinger | Karen | A1400584 |
| 98. Crissinger | Karen- Christ | A1502865 |
| 99. Crowe | Joi | A1700300 |
| 100. Crowe | Kali | A1505776 |
| 101. Cullins | Joy | A1700283 |
| 102. Curley | Kathryn | A1400583 |
| 103. Dabney | William | A1706595 |
| 104. Dailey | Margaret | A1504459 |
| 105. Dale | Tammy | A1706577 |
| 106. Davis | Joseph | A1506163 |
| 107. Davis | Nellie | A1706539 |
| 108. Dawson | Ralph | A1706550 |
| 109. Deaton | Ollie | A1700313 |
| 110. Deaton | Stefanie | A1506166 |
| 111. Deck | Damon | A1506307 |
| 112. Dennis | Sandra | A1601537 |
| 113. Densler | Robert | A1706561 |
| 114. Dority | Kristine | A1700305 |
| 115. Dotson | Carolyn | A1706418 |
| 116. Doyle | Deborah | A1505421 |
| 117. Drafts | Douglas | A1706453 |
| 118. Dugan | Patrick | A1706542 |
| 119. Dugger | Billy | A1706411 |
| 120. Dunklin | Dawn | A1706434 |
| 121. Durham | Jacob | A1403361 |

**EXHIBIT A**

| | | | |
|---|---|---|---|
| 122. | Earls | Darrell | A1706431 |
| 123. | Eder | Mona | A1601568 |
| 124. | Elfers | Kevin | A1706507 |
| 125. | Ellington | Robert (Barbara McClure) | A1706407 |
| 126. | Ellington-McClure | Connie (Barbara McClure) | A1506608 |
| 127. | Elliott | Richard | A1504466 |
| 128. | Errgang | Brenda | A1706413 |
| 129. | Esselman | Tracy | A1503652 |
| 130. | Fait | Arlene | A1506606 |
| 131. | Falkner | Tony (Barbara Pharr) | A1706408 |
| 132. | Favaron | Neil (Linda Favaron) | A1506607 |
| 133. | Feltner | Jacob | A1503379 |
| 134. | Feltner | Karen | A1503650 |
| 135. | Finnell | Caela | A1706389 |
| 136. | Fite | Troy | A1505426 |
| 137. | Ford | Shamyia | A1402763 |
| 138. | Ford | Francine | A1706462 |
| 139. | Fossett | Lennie | A1706513 |
| 140. | Franks | Amanda | A1706406 |
| 141. | Frazier | Joann | A1706484 |
| 142. | Freeman | Julie | A1504131 |
| 143. | Gardner | Judith | A1706493 |
| 144. | Geralds | Christine | A1700303 |
| 145. | Gilbert | Erma Jean | A1706460 |
| 146. | Goldstein | Christina | A1700299 |
| 147. | Good | Donna | A1706449 |
| 148. | Graber | Greg | A1603347 |
| 149. | Grabow | Maurice | A1706526 |
| 150. | Greelish | Erin | A1601539 |
| 151. | Greene | Gloria | A1706467 |
| 152. | Gregory | Robbie | A1706560 |
| 153. | Griessman | Carla | A1504132 |
| 154. | Griffin | Susan | A1706575 |
| 155. | Grimm | Jenny | A1506165 |
| 156. | Habermehl | Melissa | A1706527 |
| 157. | Haggard | Lenora | A1706514 |
| 158. | Halbert | Paris | A1504448 |
| 159. | Haley | Lynn | A1706520 |
| 160. | Hall | Alyssa | A1505430 |
| 161. | Hall | Lisa (David Hall) | A1706516 |
| 162. | Hall | Ruhama | A1706617 |

**EXHIBIT A**

| | | | |
|---|---|---|---|
| 163. | Hamilton | William | A1505427 |
| 164. | Hamilton | Samantha | A1706393 |
| 165. | Hamilton | Dorothea | A1706451 |
| 166. | Hammons | Courtney | A1706426 |
| 167. | Handorf | Ryan | A1706379 |
| 168. | Hannon | Timothy | A1706583 |
| 169. | Hartman | Adam | A1504465 |
| 170. | Hartness | Kevin | A1602538 |
| 171. | Hastings | Jessica | A1505972 |
| 172. | Hatfield | Wayne | A1706592 |
| 173. | Hayes | William (Douglas Hayes) | A1706454 |
| 174. | Haynes | Emily | A1505433 |
| 175. | Healy | Minuet | A1403757 |
| 176. | Heffner | Heather (Leslie Powers) | A1700281 |
| 177. | Heffner | Heather- Children's (Leslie Powers) | A1700326 |
| 178. | Helton | Denise | A1706368 |
| 179. | Helton | Evelyn | A1706461 |
| 180. | Henderson | Debra | A1706439 |
| 181. | Hennessy | Kelly | A1601546 |
| 182. | Hensley | Barbara | A1503355 |
| 183. | Hensley | Ryan | A1700316 |
| 184. | Herbert | Emily (Kathy Hersley) | A1500563 |
| 185. | Hersley | Kathy | A1700288 |
| 186. | Higginbotham | Karen | A1706495 |
| 187. | Hightchew | Alissa | A1306915 |
| 188. | Hillard | Michael | A1706530 |
| 189. | Hitchcock | Dirk | A1706447 |
| 190. | Hoffman | Celeste | A1506961 |
| 191. | Hon | Loretta | A1706519 |
| 192. | Hortman | Chelsea | A1706421 |
| 193. | Houghton | Robert II | A1504133 |
| 194. | Hounchell | Ricky | A1706558 |
| 195. | Hounchell | Rita | A1706559 |
| 196. | Howell | Kathryn | A1706500 |
| 197. | Hughes | Tammy | A1506960 |
| 198. | Hughes | Lois (Mary Gerbus) | A1706525 |
| 199. | Hunley | Kevin | A1503649 |
| 200. | Hursong | Carolyn | A1602538 |
| 201. | Huser | Connie (David Huser) | A1706432 |
| 202. | Hutton | Martha | A1505050 |

**EXHIBIT A**

| | | | |
|---|---|---|---|
| 203. | Hyde | Irene | A1706471 |
| 204. | Ieraci | Elsa | A1706459 |
| 205. | Janson | Tracy | A1505049 |
| 206. | Jenkins | Kimberly | A1706508 |
| 207. | Jobe | Stephanie | A1601540 |
| 208. | Johnson | Amber | A1403174 |
| 209. | Johnson | Chelsea | A1700294 |
| 210. | Johnson | Karen | A1505624 |
| 211. | Johnson | Roger | A1700329 |
| 212. | Jonas | Sara | A1504134 |
| 213. | Jones | Rachel | A1601422 |
| 214. | Jones | Tammy | A1506164 |
| 215. | Jones | Joan | A1706486 |
| 216. | Judkins | Jacqueline | A1506306 |
| 217. | Judkins | Phyllis | A1700332 |
| 218. | Juergens | Sarah (Chris McCaughey) | A1602538 |
| 219. | Kallmeyer-Ward | Linda | A1602538 |
| 220. | Kauffman | Joshua | A1503668 |
| 221. | Kauffman | Katelyn | A1602538 |
| 222. | Keplinger | Michelle | A1706607 |
| 223. | Kibler | Martha | A1706524 |
| 224. | Kidd | Deborah | A1706616 |
| 225. | King | Charlotte | A1706420 |
| 226. | Knauer | Christopher | A1504787 |
| 227. | Knauer | Maggie | A1504130 |
| 228. | Koch | Amanda | A1602538 |
| 229. | Koehler | Rose | A1504135 |
| 230. | Koehler | Shannon | A1700297 |
| 231. | Koelblin | Mike | A1506160 |
| 232. | Kopp | Valarie | A1706589 |
| 233. | Krabacher | Sheila Pogue | A1601533 |
| 234. | Krech | Larry | A1706511 |
| 235. | Lacinak | Brandon | A1400586 |
| 236. | Lainhart | Natasha (Dressman) | A1700296 |
| 237. | Langford | Nicholas | A1307857 |
| 238. | Lantry | Tom | A1706372 |
| 239. | Legendre | Patricia | A1505510 |
| 240. | Leger | Karen | A1706496 |
| 241. | Leisring | Beth | A1504457 |
| 242. | Lemmel | Sandra | A1706568 |
| 243. | Levan | Ailene | A1706405 |

**EXHIBIT A**

| 244. | Lilly | Adrian | A1504446 |
|------|-------|--------|----------|
| 245. | List | Derek | A1503024 |
| 246. | List | Lynne | A1505509 |
| 247. | Little | Tammie | A1706576 |
| 248. | Lovette | Tamala | A1706404 |
| 249. | Mains | Vicky | A1600432 |
| 250. | Mains | Rhonda | A1706555 |
| 251. | Mains | Shirley | A1706573 |
| 252. | Mann | Tammy | A1302870 |
| 253. | Marcheschi | Jack | A1308383 |
| 254. | Martin | Stacy John | A1700309 |
| 255. | Martin | Marsha | A1706523 |
| 256. | Masters | Robert | A1700295 |
| 257. | Mathews | Traci | A1706587 |
| 258. | Mathis | Brandon | A1307861 |
| 259. | Mauntel | Mary (Donald Mauntel) | A1706377 |
| 260. | Mayer | Kimberly | A1706509 |
| 261. | Mayfield | Derek | A1706443 |
| 262. | McCain | James | A1706474 |
| 263. | McCall | Jenna | A1706391 |
| 264. | McCann | Heather | A1506572 |
| 265. | McClendon | Kyra | A1506695 |
| 266. | McClure | Jeffrey (Stacy Fletcher) | A1706478 |
| 267. | McDonald | Kevin | A1401890 |
| 268. | McDonald | Marcella | A1706521 |
| 269. | McKenney | Grant | A1504462 |
| 270. | McKinney | Candi | A1700308 |
| 271. | McKnight | Tyler | A1503669 |
| 272. | McMillen | Teresa | A1706578 |
| 273. | McMurren | Mark | A1706606 |
| 274. | McNeal | Kameron | A1503653 |
| 275. | McNeal | Kerry | A1700328 |
| 276. | McQueary | Tonia | A1506957 |
| 277. | Meadows | Tiffany | A1706582 |
| 278. | Merland | Dawn | A1503354 |
| 279. | Messerschmidt | Tiffany | A1505432 |
| 280. | Metcalf | Randall | A1706551 |
| 281. | Meyer | Diane | A1706446 |
| 282. | Meyers | Thomas | A1706581 |
| 283. | Middendorf | Lyndsey | A1506649 |
| 284. | Miller | Karen | A1706497 |

**EXHIBIT A**

| | | | |
|---|---|---|---|
| 285. | Miller | Ryan | A1706566 |
| 286. | Mink | Samantha | A1401893 |
| 287. | Moffitt | Vera | A1601543 |
| 288. | Moore | Stephanie | A1505431 |
| 289. | Moore | Tim | A1706371 |
| 290. | Moore | Billie | A1706410 |
| 291. | Moore | Donald | A1706448 |
| 292. | Moore | Robert | A1706563 |
| 293. | Mounce | Robert | A1700301 |
| 294. | Mueller | Sarra | A1302875 |
| 295. | Myers | Jennifer | A1505971 |
| 296. | Nafe | Joetta | A1706488 |
| 297. | Neal | Tonya | A1706394 |
| 298. | Nelson | Charles | A1402760 |
| 299. | Newman | Marjorie | A1601535 |
| 300. | Nichols | Teresa | A1601569 |
| 301. | Nisbett | Rahman | A1503128 |
| 302. | Noble | Michelle | A1506041 |
| 303. | Nyemba | Ruvimbo | A1602538 |
| 304. | Oberlander | Wendy | A1706593 |
| 305. | Odulana | Michael | A1505419 |
| 306. | Osborn | Timothy | A1706612 |
| 307. | Owens | Dannie Mae | A1706429 |
| 308. | Payne | Haley | A1706468 |
| 309. | Peddicord | Jeff | A1706479 |
| 310. | Pelfrey | Duane | A1706470 |
| 311. | Pennington | Angela | A1503651 |
| 312. | Pfetsch | Kenneth | A1706505 |
| 313. | Phillips | Clarence | A1706425 |
| 314. | Pickett | Heather | A1307306 |
| 315. | Pickett | Heather- Children's | A1505428 |
| 316. | Potts | Jeff | A1206877 |
| 317. | Powell | Antoine | A1505434 |
| 318. | Powers | Bryan | A1706416 |
| 319. | Prater | Katie | A1601534 |
| 320. | Pridemore | Lawrence | A1506576 |
| 321. | Pritchard | Sharon (Tom Pritchard) | A1706571 |
| 322. | Puckett-Morrissette | Sherri | A1601536 |
| 323. | Pummell | Carol | A1700287 |
| 324. | Pumpelly | James | A1706473 |
| 325. | Quinn | Marcia (Misty Baker) | A1706536 |

**EXHIBIT A**

| 326. | Radeke | Sandra | A1706569 |
|------|--------|--------|----------|
| 327. | Radenheimer | Margaret | A1706522 |
| 328. | Ravenscraft | Mary | A1506161 |
| 329. | Ray | Todd | A1506573 |
| 330. | Redrow | Samantha | A1504456 |
| 331. | Reed | Mark | A1506490 |
| 332. | Reed | Danielle | A1706428 |
| 333. | Reeder | Juanita Jane | A1706492 |
| 334. | Reeves | Valerie | A1706588 |
| 335. | Reifenberger | Holly | A1604027 |
| 336. | Remley | Jeffrey | A1706477 |
| 337. | Reynolds | Derrill | A1706444 |
| 338. | Reynolds | Harry | A1706469 |
| 339. | Reynolds | Kent II | A1706506 |
| 340. | Reynolds | Lisa | A1706517 |
| 341. | Ribariu | Jordan | A1603343 |
| 342. | Richardson | John | A1601542 |
| 343. | Riley | Jason | A1706475 |
| 344. | Rister | Donna (Gordon Rister) | A1706450 |
| 345. | Roark | Deborah | A1601421 |
| 346. | Robbinson-Woods | Theresa | A1505872 |
| 347. | Robinson | Kelly | A1706502 |
| 348. | Rodriguez | Debbie | A1601532 |
| 349. | Romer | Jason | A1706603 |
| 350. | Rose | Dorothy | A1506696 |
| 351. | Rosebery | Faye | A1700331 |
| 352. | Roundtree | Sandra | A1603341 |
| 353. | Rowley | Ronald | A1602538 |
| 354. | Rueve | Kathrynn (Stephen Carmen) | A1706574 |
| 355. | Runtz | Robert | A1706562 |
| 356. | Rutter | Carson (Christina Rutter) | A1402941 |
| 357. | Sand | Mike | A1506694 |
| 358. | Scheper | Chris | A1706423 |
| 359. | Schiller | Robin | A1706564 |
| 360. | Schimmel | Joseph | A1706491 |
| 361. | Schmidt | Kim | A1600109 |
| 362. | Schmit | Kevin | A1400009 |
| 363. | Schmit | Patrick | A1506162 |
| 364. | Schock | Susan | A1700291 |
| 365. | Schultz | Steven Andrew | A1506861 |
| 366. | Schulze | Timothy | A1706584 |

**EXHIBIT A**

| | | | |
|---|---|---|---|
| 367. | Schuster | Ronald | A1506303 |
| 368. | Scott | Rhonda | A1601541 |
| 369. | Scott | Delores | A1706441 |
| 370. | Scully | Ali | A1504452 |
| 371. | Sears | Ruthie | A1403488 |
| 372. | Setters | Dana | A1506570 |
| 373. | Shafer | Glenna | A1706466 |
| 374. | Shannon | Asia | A1403365 |
| 375. | Shepherd | Charlann | A1504455 |
| 376. | Shott | Greg (Patricia Shott) | A1502144 |
| 377. | Sizemore | Michelle | A1706533 |
| 378. | Slayback | Heather | A1504453 |
| 379. | Slone | Crystal (Haley Warren) | A1706402 |
| 380. | Smallwood | Donna | A1706600 |
| 381. | Smith | Donald | A1700302 |
| 382. | Smith | David | A1706433 |
| 383. | Smoote | Orris | A1504461 |
| 384. | Snider | David | A1700285 |
| 385. | Spangenberg | Sherrie | A1700317 |
| 386. | Spivy | Billy | A1602538 |
| 387. | Stallings | Eddie | A1706456 |
| 388. | Stephens | Michelle | A1706534 |
| 389. | Stephenson | Patrick | A1706544 |
| 390. | Stigall | Deon Jr. | A1501742 |
| 391. | Stratman | Sierra | A1305127 |
| 392. | Tackett | Ryan | A1505420 |
| 393. | Tanner | Ryan | A1506304 |
| 394. | Taylor | Alex | A1402940 |
| 395. | Taylor | Karen | A1706498 |
| 396. | Thaeler | Ben | A1504449 |
| 397. | Thien | Brian | A1706415 |
| 398. | Thiessen | Edward | A1706457 |
| 399. | Thomas | Adrienne | A1700304 |
| 400. | Underwood | Connie | A1700312 |
| 401. | Underwood | Kimberly | A1706510 |
| 402. | Upchurch | Jacklen | A1700290 |
| 403. | Vance | Jordan | A1506575 |
| 404. | Wallace | Shannon | A1505425 |
| 405. | Wallace | Vicki | A1504458 |
| 406. | Walls | Katherine | A1506955 |
| 407. | Walsh | Lindsay | A1403490 |

**EXHIBIT A**

| 408. | Walsh | Tracey | A1700286 |
|---|---|---|---|
| 409. | Walters | Michelle | A1706535 |
| 410. | Ward | Helen | A1402762 |
| 411. | Watkins | Michael | A1706531 |
| 412. | Waxler | Elaine | A1706601 |
| 413. | Webber | Daniel | A1403644 |
| 414. | Weber | Cathleen | A1504463 |
| 415. | Webster | Brandon | A1505429 |
| 416. | Weisbecker | Laura | A1506223 |
| 417. | Weisman | Kirstin | A1706392 |
| 418. | Wesley | Regina | A1706554 |
| 419. | Whalen | Timothy | A1706585 |
| 420. | Whalen | Violet | A1706591 |
| 421. | Wheeler | Lonnie | A1706518 |
| 422. | White | Sophia | A1600232 |
| 423. | Wilder | Tamathy | A1706611 |
| 424. | Wilder | Troy | A1706613 |
| 425. | Williams | Benjamin | A1706409 |
| 426. | Williams | Kelly | A1706504 |
| 427. | Willoughby | Patrick | A1706543 |
| 428. | Wilson | Joseph (Alisa Wilson) | A1505775 |
| 429. | Wilson | Robert | A1506860 |
| 430. | Wilson | Terry | A1600233 |
| 431. | Wilson | Vicky | A1601538 |
| 432. | Wilson | Carol | A1706419 |
| 433. | Wilson | Jetton | A1706483 |
| 434. | Wilson | Paula | A1706545 |
| 435. | Wilson | Paul | A1706547 |
| 436. | Wingert | Dawn | A1706436 |
| 437. | Wittmeyer | Priscilla | A1706609 |
| 438. | Wolder | Bill | A1700292 |
| 439. | Wolsing | Billy | A1506693 |
| 440. | Wooten | Carla | A1601545 |
| 441. | Work | Amber | A1706597 |
| 442. | Worley | Deborah | A1706438 |
| 443. | Wright | Cory | A1402534 |
| 444. | Wright | Leah (Ron Wright) | A1706565 |
| 445. | Wyatt | Cheryl | A1505970 |
| 446. | Yeakle | Veronica | A1600235 |
| 447. | Young | Evelyn | A1502866 |
| 448. | Young | Joann | A1706485 |

**EXHIBIT A**

| 449. | Young | Keith | A1706501 |
|------|---------|---------|----------|
| 450. | Zachry | Corrine | A1600762 |
| 451. | Zureick | Mary | A1400581 |
| 452. | Zymslo | Hannah | A1506305 |