UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FRIEDA AARON, *et al.* | : | Case No. 1:17cv846 |
| Plaintiffs, | : | Judge Michael R. Barrett |
| v. | : | |
| CHIEF JUSTICE MAUREEN O'CONNOR, *et al.* | : | |
| Defendants. | : | |
| | : | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Amended Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 8). Defendant Chief Justice O'Connor filed a response (Doc. 12) and Plaintiffs filed a reply (Doc. 13).

Plaintiffs' bring claims under 42 U.S.C. § 1983 alleging violations of their due process rights. (Doc. 1, PageID 39 at ¶¶ 121-22). On December 27, 2017, the Court held a telephone status conference with counsel for the parties. During that conference, the Court explained that it intended to rule on the issue of abstention before addressing Plaintiffs' request for injunctive relief. At Plaintiffs' request, the Court permitted additional briefing on the issue of abstention. Plaintiffs filed their brief on January 5, 2018 (Doc. 19). Defendant Chief Justice O'Connor filed a response to Plaintiffs' brief on January 12, 2018, and Plaintiffs filed a reply on January 15, 2018 (Docs. 27, 28). Defendant Judge Schweikert addressed the abstention issue in his Motion to Dismiss Plaintiffs' Verified Complaint and Memorandum in Opposition to Plaintiffs' Amended Motion for a Temporary Restraining Order (Doc. 23). The Court held a hearing on the issue of abstention on January 17, 2018. The matter of abstention is now ripe for disposition.

1

## I. BACKGROUND/FACTS

The facts in the underlying cases commonly referred to as "the Durrani cases" are not entirely relevant to the instant matter. Briefly, Plaintiffs' counsel represents approximately 528 clients in Hamilton County in medical malpractice claims against Dr. Abubakar Atiq Durrani and various hospitals where he treated his patients. (Doc. 1, PageID 7 at ¶ 29). The first of these cases was filed nearly five years ago. (Id. at ¶ 1). The Durrani cases have been in multiple venues—some were originally filed in Butler County, others were removed to federal court. (*See generally* Doc. 1). The Durrani cases giving rise to the instant lawsuit are presently being litigated in Hamilton County. (Id.). The Durrani cases have also been before a number of judges; at one time or another, they have been consolidated, returned to their originally assigned judges, and assigned to visiting judges. (Id.). Most recently, Defendant Judge Mark Schweikert was appointed by Defendant Chief Justice O'Connor to preside over the Durrani cases. (Doc. 1, PageID 19 at ¶ 55). He remains the current judge assigned to the Durrani cases. (*See generally* Doc. 1).

On December 15, 2017, Plaintiffs' counsel, Matthew Hammer, filed with the Clerk of the Supreme Court of Ohio an "Affidavit of Disqualification of Chief Justice Maureen O'Connor and Judge Mark Schweikert." (Doc. 1-1). In the Affidavit, Mr. Hammer avers that Chief Justice O'Connor and Judge Schweikert have "a bias and prejudice against Plaintiffs and their claims." (Doc. 1-1, PageID 57).

On December 18, 2017, Plaintiffs filed the instant lawsuit and their motion for injunctive relief. They seek to enjoin Chief Justice O'Connor from ruling on the Affidavit of Disqualification, and they seek to enjoin Judge Schweikert "from taking any action on their cases" while their Affidavit of Disqualification is pending. (Doc. 1, PageID 2 at ¶ 2).

As explained more fully herein, Ohio Rev. Code § 2701.03 governs the disqualification of Judge Schweikert. Ohio Rev. Code § 2701.03(2)(D)(1) provides that, absent limited circumstances not present herein, if the clerk of the Supreme Court accepts an affidavit of disqualification, "the affidavit deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding" until the affidavit is ruled on. As for Chief Justice O'Connor, although the Durrani cases are not in front of her, Plaintiffs argue she should not be permitted to decide the issue of disqualification as it pertains to Judge Schweikert. (Doc. 1, PageID 2). Ohio Supreme Court Practice Rule 4.04 governs the disqualification and recusal process of state Supreme Court justices. As explained above, the question before the Court is whether the abstention doctrine bars this Court from deciding Plaintiffs' claims.

## II. YOUNGER ABSTENTION

The *Younger* abstention doctrine bars a federal court from granting "'injunctive or declaratory relief that would interfere with' state judicial proceedings pending at the time that a federal complaint is filed." *Shafizadeh v. Bowles*, 476 Fed.Appx. 71, 73 (6th Cir. 2012) (internal citations omitted). As the Supreme Court has explained, *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L.Ed.2d 116 (1982).

For years, courts applied the following factors set forth in *Middlesex* to determine whether the *Younger* abstention doctrine was applicable: 1) whether the underlying proceedings constitute an ongoing judicial proceeding; 2) whether the proceedings implicate important state

interests, and 3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *Middlesex*, 457 U.S. at 432-34, 102 S. Ct. 2515.

The United States Supreme Court recently revisited the *Younger* abstention doctrine, and clarified its ruling in *Middlesex*. *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 187 L.Ed.2d 505 (2013). The Court explained that while the *Younger* abstention doctrine can apply to civil proceedings (in addition to criminal prosecutions), its application to such proceedings exists only in a few circumstances. *Sprint*, 134 S Ct. at 591, 187 L.Ed.2d 505. Accordingly, the Court held that only three types of proceedings warrant abstention: 1) ongoing state criminal prosecutions; 2) certain civil enforcement proceedings; and 3) pending "civil proceedings involving certain orders … uniquely in furtherance of the state court's ability to perform their judicial functions." *Id.* (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368, 109 S. Ct. 2506, 105 L.Ed 2d 298 (1989) ("NOPSI")). Thus, before application of the *Middlesex* factors, courts must first determine whether one of the circumstances outlined in *NOPSI* exists. The Court begins its analysis here.

**A. *NOPSI* Analysis**

Both parties agree that the first two *NOPSI* circumstances do not apply. Accordingly, the question herein in is whether a pending affidavit of disqualification of a judge is a proceeding that involves certain orders uniquely in furtherance of the state court's ability to perform their judicial functions.

Defendants argue that disqualification and recusal of judges is, by its very nature, a judicial process. Indeed, applying the *Middlesex* factors, federal courts have routinely abstained from interfering with the recusal process in state courts. *See. e.g., Shafizadeh*, 476 Fed. Appx. at *2. However, the parties cite only one instance wherein a court analyzed the issue following

*Sprint*, and the Court's independent research revealed the same. *Thomas v. Piccione*, No. 13–425, 2013 WL 5566505 (W.D. Pa. Apr. 24, 2014). On reconsideration, the court in *Thomas* acknowledged it was clear error in light of *Sprint* not to address whether recusal of a judge fell into one of the three categories delineated in *NOPSI*. *Id.* at *3. The court reasoned that by asking the court to order the recusal of a state court judge, the plaintiff was challenging the state court's judicial recusal process. *Id.* at *5. Accordingly, the court concluded that recusal of state court judges fell into the third circumstance in *NOPSI*—that is, pending "civil proceedings involving certain orders … uniquely in furtherance of the state court's ability to perform their judicial functions[,]" and therefore abstained. *Id.*

Plaintiffs contend *Thomas* got it wrong. They argue that in order for abstention to be appropriate, the civil proceeding must specifically relate to the state court's ability to enforce its orders and judgments. (Doc. 28, PageID 1546) (citing *Sprint*, 134 S. Ct. at 588). Because there has not yet been a decision on the Affidavit of Disqualification[1], they argue there is no order or judgment, thereby falling outside the scope of the third category. In other words, their interpretation of the language in *NOPSI* is that there must be a *past* order or judgment. (Doc. 28, Page ID 1545) ("[T]here have been no orders entered in the state court actions for *Younger* to attach … The Supreme Court has indicated that an entry of state court orders and judgment appear to be a prerequisite for an application of *Younger*.").

The Court in *Sprint* listed (by way of citation) two specific situations in which the third category would apply – civil contempt orders and requirements for posting bond pending appeal. *Sprint,* 134 S. Ct. at 592 (citing *Juidice v. Vail*, 430 U.S. 327 1977; *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 95 L.Ed.2d 1 (1987)). However, while there was an order in *Juidice*, the same cannot necessarily be said for *Pennzoil*. In *Pennzoil* there was a verdict, but

---

[1] To date, Plaintiffs' counsel has filed seven affidavits of disqualification in this matter.

not yet a judgment at the time the federal case was filed. *Pennzoil*, 481 U.S. at 4 ("The parties anticipated that the judgment…would exceed $11 billion." … "[I]t was clear that the expected judgment would give Pennzoil significant rights under Texas law.").[2] Accordingly, Plaintiffs' narrow interpretation of *NOPSI* misses the mark.

Moreover, in the sentence preceding the citations in which Plaintiffs rely, the Court in *Sprint* explained that the proceeding at issue therein[3] "did not touch on a state court's ability to perform its judicial function." *Sprint,* 134 S. Ct. at 592. Thus, the language chosen by the Court in *Sprint* did not specifically limit abstention to past orders or judgments. Rather, the Court's focus was on the state court's ability to perform its judicial function. To be sure, this Court would be hard-pressed to envision a scenario more closely related to the state court's ability to perform its judicial function than the recusal and disqualification process of its own judges. *See e.g. Gilbert v. Ferry*, 401 F.3d 411, 419 *rev'd in part by* 413 F.3d 578 (6th Cir. 2005) (rehearing). Thus, while the Supreme Court cited two examples in which a state court's ability to perform its judicial function would be interfered with, the Court is not persuaded that, in doing so, the Supreme Court intended to create an exhaustive list.

Finally, the specific language chosen by the Supreme Court in *NOPSI* is instructive. The Court did not hold that for "abstention to attach" there must be a previous order issued as Plaintiffs argue.[4] Rather, the Court limited abstention to proceedings *involving* certain orders or

---

[2] The Court also noted that federal injunctions in such cases would "challenge the very process by which [state court] judgments were obtained." *Pennzoil*, 481 U.S. at 14, 107 S. Ct. 1519.

[3] In *Sprint* the Supreme Court held that abstention was not appropriate merely because a pending state-court proceeding involved the same subject matter. *Sprint*, 134 S. Ct. at 588.

[4] The Court sees another potential problem with Plaintiffs' argument that simply filing suit in federal court before an order or judgment was issued saves their claims from the *Younger* abstention doctrine. If the Court were to accept Plaintiffs' interpretation of the language in *NOPSI*, it appears there would be little practical difference between the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine. *Executive Arts Studio, Inc. v City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (finding the *Rooker-Feldman* doctrine prohibits federal district courts from

6

judgments. Here, the state court proceeding undeniably involves certain orders, past or future, uniquely in furtherance of the state court's ability to perform their judicial functions. And any interference by this Court would undoubtedly affect the state court's ability to compel compliance with its future orders regarding the disqualification process.

Plaintiffs disagree. They argue they are not attacking the state court's process, but rather how the process was applied to their case. Nevertheless, a decision regarding the disqualification or recusal of Chief Justice O'Connor pursuant to Supreme Court Practice Rule 4.04 has not been made. Thus, any relief the Court grants would be anticipatory. In other words, Plaintiffs assume Chief Justice O'Connor will not recuse herself or otherwise be disqualified, and they assume she will deny their Affidavit of Disqualification of Judge Schweikert. Indeed, by granting the relief Plaintiffs request, this Court would effectively be telling the Supreme Court of Ohio how to perform its judicial function as it relates to disqualification of state court judges. As the Court explained in *Middlesex,* the *Younger* abstention doctrine prohibits such interference by federal courts, and *Sprint* did not change that.

Considering the foregoing, the Court finds this case falls into one of the three "exceptional circumstances" identified in *NOPSI*. *Sprint*, 134 S. Ct. at 593-94.

**B. *Middlesex* Factors**

The next step then, is to determine whether the *Middlesex* factors are satisfied. As explained above, the Court considers three additional factors when determining whether the *Younger* abstention doctrine applies: 1) whether the underlying proceedings constitute an ongoing judicial proceeding; 2) whether the proceedings implicate important state interests, and

---

exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings."). However, this issue was not raised by the parties.

3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *Middlesex*, 457 U.S. at 432-34, 102 S. Ct. 2515. If all three factors exist, abstention is warranted.

There can be little dispute that the first two *Middlsex* factors are satisfied. First, Plaintiffs have initiated, by way of an Affidavit of Disqualification, a state court proceeding. Second, the Sixth Circuit has held that the recusal of judges is an important state interest. *Gilbert*, 401 F.3d at 419. Accordingly, the Court turns its attention to the third factor—whether there is an adequate opportunity for Plaintiffs to raise a constitutional challenge in the state proceedings.

By virtue of their filings, Plaintiffs raise two separate issues—the disqualification of common pleas state court judges and the disqualification of justices of the Supreme Court of Ohio. The Court addresses each in turn.

Ohio Revised Code § 2701.03 governs the filing of affidavits of disqualification of judges of common pleas courts, as well as the process by which affidavits of disqualification are reviewed and decided. The statute states, in relevant part:

> If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.

Ohio Rev. Code § 2701.03(A). Upon the filing of a properly filed affidavit, the clerk of the Supreme Court "shall accept the affidavit for filing and shall forward the affidavit to the chief justice of the supreme court." Ohio Rev. Code § 2701.03(C)(1)(a). Upon receipt from the clerk of the Supreme Court, the chief justice of the Supreme Court or a justice of the Supreme Court designated by the chief justice decides whether to grant or deny the affidavit. *See generally* Ohio

Rev. Code §§ 2701.03(D)(4), (E). Plaintiffs filed an Affidavit of Disqualification (and six subsequent affidavits).

In *Gilbert*, the Sixth Circuit explained in the context of recusal of judges, that plaintiffs "had an adequate opportunity to raise their constitutional challenge, as evidenced by the fact that their lengthy brief in support of their motion to recuse contained the same arguments and proofs as presented in their complaint filed in federal court." 401 F.3d at 419. Similarly, Plaintiffs have filed seven Affidavits of Disqualification in the state court proceeding, and those pleadings present nearly identical arguments presented in their Complaint herein. (*Compare* Doc. 1 *with* Doc. 1-1). Accordingly, the Court finds Plaintiffs have an adequate opportunity to raise their constitutional challenge as it relates to the Affidavit of Disqualification of Judge Schweikert. Ohio law provides a procedure by which Plaintiffs may do so, and Plaintiffs have taken advantage of that procedure.

Ohio Revised Code § 2701.03, however, does not govern the disqualification of Ohio Supreme Court justices. *See generally* Ohio Rev. Code § 2701.03. Rather, Supreme Court Practice Rule 4.04 does. *See generally* S.Ct.Prac.R. 4.04. The Rule permits a party to a case pending before the Supreme Court of Ohio to "request the recusal of a justice by filing a request with the Clerk of the Supreme Court." S.Ct.Prac.R. 4.04(B). The justice named in the request shall then "submit a written response to the Clerk indicating whether the justice will recuse from the case." S.Ct.Prac.R. 4.04(C). While this procedure is similar to the Ohio law governing the disqualification of Judge Schweikert (and other state court judges), Rule 4.04 provides that the Supreme Court justice herself determines whether to recuse. *See e.g,. Moss, et al. v. Bush, et al.*, 105 Ohio St.3d 11, 821 N.E.2d 992 (Ohio 2004). However, in *Caperton*, the United States Supreme Court granted a petition for a writ of certiorari to determine whether a state Supreme

Court justice's failure to recuse himself violated the Due Process Clause of the Fourteenth Amendment. *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S. Ct. 2252, 173 L.Ed.2d 1208 (2009).[5] Therefore, Ohio Supreme Court Practice Rule 4.04 itself provides an adequate opportunity for a plaintiff to commence a constitutional challenge – by filing a request for recusal with the clerk of the Supreme Court – thereby satisfying the third *Middlesex* factor.[6]

## IV.  CONCLUSION

Considering the foregoing, the Court finds the *Younger* abstention doctrine extends to this case. Accordingly, Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction (Doc. 8) is **DENIED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

    s/*Michael R. Barrett*
    Michael R. Barrett, Judge
    United States District Court

---

[5] While the parties cite *Caperton* in support of their arguments (either highlighting similarities or distinguishing the facts), neither party acknowledges the process by which the parties in *Caperton* sought review of their constitutional claims. There, following an adverse ruling on the issue of recusal, the parties filed a petition for a writ of certiorari in the United States Supreme Court. At no point did the parties in *Caperton* seek review by a federal district court.

[6] From the record before it, the Court is not convinced Plaintiffs have properly sought the recusal of Chief Justice O'Connor. It appears as though Plaintiffs filed a combined Affidavit of Disqualification, seeking to disqualify Judge Schweikert and asking a justice other than Chief Justice O'Connor to rule on it. In support, Plaintiffs cite S.Ct.Prac.R. 14.6. There is, however, no Rule 14.6.